IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-10717
_____


CLIFFORD HOLT BOGGESS,

Petitioner-Appellant,

versus

GARY L. JOHNSON, Director,
Texas Department of Criminal
Justice, Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court for the
Northern District of Texas
(7:03-CV-159-X)

_____

November 18, 1997

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

In this death penalty case, we hold that the district court was correct to deny appellant Clifford Holt Boggess's petition for a writ of habeas corpus. On appeal, Boggess has three interconnected arguments, all revolving around a jury sentencing instruction that he contends was erroneous under state law. Even assuming that this point is correct, Boggess's arguments for habeas relief are without merit.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Boggess contends that his sentencing instruction was erroneous because it improperly informed the jury of his possibility for parole under a life sentence, and exaggerated this possibility by stating that any good conduct time he earned would be taken into account in calculating the mandatory minimum. The jury instruction does seem to have been incorrect in this latter respect, and shortly after Boggess's sentencing, the Texas Supreme Court ruled that instructing the jury on parole law pursuant to statute in a noncapital case violated the separation of powers clause of the Texas Constitution. See Rose v. State, 752 S.W.2d 529 (Tex. 1987). Although the effect of Rose on a capital case like Boggess's is not entirely clear, we will assume for purposes of argument that it applies to Boggess and renders his jury instruction erroneous for including the information about parole at all.

Boggess first complains that his trial counsel was inadequate under the Sixth Amendment because he requested and accepted the erroneous instruction. Under Strickland v. Washington, 466 U.S. 668, 687 (1984), Boggess must show (1) deficient performance by counsel, which (2) resulted in actual prejudice, in order to succeed in this claim. Even assuming that his counsel's performance was deficient for making a mistake about "good time" and not predicting the outcome of Rose, we are unpersuaded that Boggess has established prejudice under Strickland. To determine

2

whether prejudice at sentencing has been shown for purposes of Strickland, we must ask "whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent that it independently reweighs the evidence-- would have concluded that the balance of aggravating and mitigating circumstances did not warrant" the death penalty.  Id. at 695.

In Boggess's case, the imposition of the death sentence turned on the jury's finding that Boggess would pose "a continuing threat to society," so we must examine the evidence that bears on this point.  In this regard, the trial revealed that Boggess had committed a calculated, brutal robbery and murder of an elderly shopkeeper in Boggess's own home town for $500.  At sentencing, the prosecution presented additional evidence that Boggess had pled guilty to another similar robbery/murder of an elderly shopkeeper, that he would serve a minimum of nineteen years for that crime, that he had sent various threatening letters[1] to acquaintances

---

[1]As the district court found, a representative example is the following:

> But I'll get you for what you have done to me.  Lucifer-- my Lord Satan--He and I shall see your sole [sic] burn in hell.  As I sit at his right hand in the pit of eternal flame-well (sic) burn your sole before your eyes and the souls of all your children. Except Kim.  And oh how the screams will echo in my Kings palace of sin.  HEE-HEE- HEE.  I can hardly wait.  I'm not afraid of the pen and i'm [sic] not afraid to die, for Lucifer awaits me.  And then, I shall come for you.  Remember & remember well. From now on your life will be filled with misery and bad

demanding that they cooperate in his defense, that he had threatened to "head[] for the judges [sic] throat" if he received a death sentence, and that he had been violent and threatening toward prison guards. As to this latter point, the prosecution argued strenuously that Boggess would pose a future danger to both guards and other inmates in prison.

In the light of this overwhelming evidence in favor of a finding of future dangerousness, we agree with the district court that there is no reasonable probability that Boggess's sentence would have come out any differently had the information about parole been wholly excluded from the instruction. In this regard, we note that the future dangerousness inquiry in Boggess's case was not limited to dangerousness to free society but included danger to others in the prison milieu, including guards, that any exaggeration caused by the "good time" error was nullified by the nineteen year minimum sentence for the other robbery/murder, and that the United States Supreme Court has recently indicated that accurate information concerning parole is generally helpful to the sentencing process. See Brown v. Texas, 1997 WL 333359 (opinion respecting denial of writ of certiorari).

Boggess next complains that his appellate counsel (the same as at trial) was inadequate for not raising the sentencing instruction

fortune.

4

as error on direct appeal.  This claim also fails under <u>Strickland</u>, for the same lack of prejudice discussed above.

Finally, Boggess argues belatedly that, even if his Sixth Amendment claims fail, he is nonetheless entitled to federal habeas relief because the jury instruction itself violated his Eighth and Fourteenth Amendment rights under <u>Simmons v. South Carolina</u>, 512 U.S. 154 (1994).  In that case, the Supreme Court held that, where a state bases a death sentence at least in part on the future dangerousness of the defendant, and the alternative sentence to death is life without parole, the state is required to reveal the lack of eligibility for parole to the jury.  <u>Id.</u> at 169-71.  In <u>Aldridge v. Scott</u>, 41 F.3d 213 (5th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1108 (1995), however, this court specifically limited the reach of <u>Simmons</u> to cases where "the state argues that the defendant is a future danger to free society."  41 F.3d at 222 n.12.  "[W]hen the state argues that the defendant poses a future danger to everybody, fellow inmates included, then <u>Simmons</u> is inapplicable because whether the defendant is eligible for parole is irrelevant."  <u>Id.</u>  Because the prosecutor specifically argued here that Boggess would pose a future danger to other inmates, <u>Simmons</u> is inapplicable.  Furthermore, <u>Simmons</u> is also inapplicable because Boggess's alternative sentence was not life without parole.  See <u>Kinnamon v. Scott</u>, 40 F.3d 731, 733 (5th Cir. 1994).  Finally,

we note in passing that this claim is also contradicted by the Supreme Court's generally positive treatment of parole information in <u>Brown</u>.[2]

Although Boggess may not have received a perfect jury instruction under the contemporary Texas law, the one that he did get was certainly not unfairly prejudicial, and the sentence that resulted was appropriate for his depraved and brutal crime. Accordingly, the judgment of the district court is

A F F I R M E D.

---

[2]To the extent that Boggess is arguing this claim solely on the basis of the mistake about "good time," we hold that this minor error of state law is not sufficient to implicate his rights under the Eighth or Fourteenth Amendments. As the Supreme Court noted in <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991), for a jury instruction erroneous under state law to become a constitutional due process violation, it must "itself so infect[] the entire trial process that the resulting conviction itself violates due process." For the same reasons noted with regard to prejudice under <u>Strickland</u>, this was not the case here.